IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
AT JACKSON

| | |
|---|---|
| ADAM MAYFIELD<br><br>  *Plaintiff,*<br><br>*v.*<br><br>JUSTIN BRYANT, CHRIS BURKEEN, MICHAEL JONES, and CITY OF BOLIVAR<br><br>  *Defendants.* | Case No.<br><br><br>JURY DEMANDED |

## COMPLAINT

Comes now the Plaintiff, ADAM MAYFIELD, by undersigned counsel and for his complaint against the Defendants states the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

1

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

5.      Plaintiff Adam Mayfield is an adult resident of Hardeman County, Tennessee.

6.      Defendant Justin Bryant is a police officer of the Bolivar Police Department. He is sued in his individual capacity.

7.      Defendant Chris Burkeen is a police officer of the Bolivar Police Department. He is sued in his individual capacity.

8.      Defendant Michael Jones is the chief of police of the Bolivar Police Department. He is sued in his individual capacity.

9.      Defendant City of Bolivar is a political subdivision of the State of Tennessee and was, at all relevant times, the employer of Defendants Bryant, Burkeen, and Jones.

10.     At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

11.     At all times relevant to this Complaint, all defendants acted under color of state law.

## FACTUAL ALLEGATIONS

12.     On June 18, 2025, Mr. Perry Howell, Jr. filed a report with the Bolivar Police Department regarding alleged harassment and stalking.

13.     Mr. Howell provided the Bolivar Police Department with three text message threads to support his allegations.

14.     At all relevant times, Defendant Bryant maintained a personal relationship with Mr. Howell, including social interaction and regular gym attendance together. Bryant's involvement in initiating and advancing the criminal investigation occurred against the backdrop of this personal relationship.

15.     The first text thread was between Dylan Bratschie and the phone number 901-697-7149.

16.     On March 30, 2025, Bratschie received a text message from 901-697-7149 stating that "the 'Howell' man who bonded him out of jail had set him up and caused him to go to jail."

17.     Another text message sent to Bratschie on March 30, 2025 stated that "Howell works for the Bolivar Police Department and the TBI, and that it was a setup for him to go to jail."

18.     The second text thread was between Mike Siler and the phone number 901-697-7149.

19.     A text message sent to Siler on March 30, 2025 stated that "his girlfriend Joann was spending a lot of time with the 'Howell' man," and accused Joann and Mr. Howell of infidelity.

20.    The third text thread was between Brittany Avent, the girlfriend of Mr. Howell, and the phone number 615-334-9571.

21.    A text message sent to Avent on June 7, 2025, stated that "Mr. Howell had been talking to other women and that she should look at his criminal record for being extremely violent and abusive."

22.    Not a single text message relied on for probable cause was sent to Mr. Howell.

23.    Not a single text message relied on for probable cause threatened Mr. Howell.

24.    Defendants did not interview any of the recipients of the alleged text messages, did not seize or forensically examine any cellular devices, and did not independently verify the authenticity or origin of the screenshots provided by Mr. Howell. Defendants relied exclusively on Mr. Howell's representations without corroboration.

25.    In response to Mr. Howell's report and the text messages provided, Defendant Bryant applied for judicial subpoenas.

26.    The documents obtained through the judicial subpoenas allegedly resulted in information that Defendant Bryant believed identified the person behind the 615-334-9571 number.

27.    Defendant Bryant determined that both phone numbers used in the text messages were assigned to "Affinity Click" at the time the messages were sent.

28.    Defendant Bryant then applied for a judicial subpoena directed to "Affinity

Click."

29.    "Affinity Click" responded that the unknown numbers were assigned to the username "southeastbeast0316@protonmail.com."

30.    "Affinity Click" further stated that outgoing text messages were transmitted using the IP address 24.40.126.72.

31.    Defendant Bryant then applied for a judicial subpoena relating to the IP address 24.40.126.72, which belonged to Aeneas of Jackson, Tennessee.

32.    Aeneas responded with account number 2040713, which Aeneas claimed belonged to Plaintiff Adam Mayfield at the address 135 Mayfield Way, Bolivar, Tennessee 38008.

33.    On August 22, 2025, Defendant Bryant asked Plaintiff to come to the Bolivar Police Department to help him on a case.

34.    Upon Plaintiff's arrival, Defendants Bryant and Burkeen began questioning Plaintiff regarding the anonymous text messages.

35.    During the interrogation, Defendants changed the focus of questioning from the text messages to Plaintiff's sixteen-year-old son.

36.    Defendants commented that Plaintiff's son was a talented football player.

37.    Defendants stated that how Plaintiff's son performed in his football game that night "would depend on how this conversation goes."

38.    Defendants stated that they had permission from District Attorney Joe Van Dyke to "lock up everyone on Plaintiff's property" if no one admitted to sending the messages.

39.    Defendant Burkeen further stated that the matter was "like playing poker" and that he was not going to "show his hand," indicating that the investigation was being used as leverage rather than neutral fact-finding.

40.    Defendant Burkeen described the situation as "just another day at the office."

41.    During the interrogation, Defendants showed Plaintiff an alleged Aeneas internet account listing Plaintiff's family members.

42.    The Aeneas account presented to Plaintiff contained a misspelling of Plaintiff's mother's name.

43.    After Plaintiff left the police department, Defendants summoned Plaintiff's wife for questioning.

44.    During the questioning of Plaintiff's wife, Defendants again relied on the Aeneas account number 2040713 and asserted it belonged to Plaintiff Mayfield.

45.    Again, Defendants insisted that they would arrest Plaintiff's family if no one confessed to sending the anonymous text messages.

46.    Defendants requested that Plaintiff's wife submit to a polygraph examination and stated she would be required to personally pay for it.

47.    After the interrogation of Plaintiff and his wife, Plaintiff contacted Public Defender Matthew Edwards, who then spoke with District Attorney Van Dyke.

48.    District Attorney Van Dyke informed Edwards that had not advised anyone's arrest in connection with these events, stated the matter appeared at most civil in nature, and advised that he was not pursing criminal charges.

49.     On or about August 27, 2025, Edwards informed Plaintiff that Bolivar Police Department Chief Mike Jones had approached Van Dyke and insisted warrants be issued despite Van Dyke's position that no crime had occurred.

50.     On August 27, 2025, Defendant Justin Bryant swore out an Affidavit of Complaint alleging that on or about March 30, 2025 Adam Mayfield violated T.C.A. 39-17-315 by allegedly stalking Perry Howell Jr.

51.     Plaintiff voluntarily surrendered himself at the Bolivar Police Department to avoid being arrested at his home or business.

52.     Plaintiff arrived accompanied by his criminal counsel, Joe Byrd, and by a bail bondsman, consistent with his understanding that he would be immediately booked and released.

53.     Contrary to prior assurances, Plaintiff was not immediately released and was instead placed in a holding cell.

54.     Plaintiff was informed that he would be held on a $10,000 bond.

55.     Plaintiff was locked in a cell for more than twelve (12) hours.

56.     Plaintiff was held on a so-called "cooling down period" despite the fact that the text messages occurred months earlier in March and June.

57.     During his confinement, Plaintiff was denied potable water.

58.     The cell toilet was clogged with feces and urine, and Plaintiff was forced to manually unclog it using only sheets.

59.     Plaintiff's water supply consisted only of a fountain that produced a small amount of hot water after a six-second delay.

60.    Plaintiff informed booking personnel that he required his prescribed insomnia medication should he be held, but no medication was provided.

61.    Plaintiff was not checked on by officers during the twelve-hour period except for the delivery of food by another inmate.

62.    An officer walked past Plaintiff's cell multiple times and ignored his requests for water and medication.

63.    Eventually, Plaintiff was brought before Judge Harriet Thompson by video screen for an arraignment, which was conducted in a hallway.

64.    Judge Thompson set Plaintiff's bond at $10,000.

65.    Plaintiff was returned to the holding cell after the arraignment and remained there until approximately 9:15 p.m.

66.    After more than twelve hours in confinement, Plaintiff was finally released.

67.    Plaintiff retained criminal defense counsel Joe Byrd.

68.    On October 6, 2025, at Plaintiff's preliminary hearing, ADA Van Dyke informed Plaintiff's attorney and his forensic expert that the State "wanted out of the front end" of the case.

69.    ADA Van Dyke instructed Plaintiff's counsel to request dismissal and stated that he would support the motion.

70.    Van Dyke agreed that no Tennessee law had been violated, that no evidence existed showing Plaintiff or anyone in the Plaintiff's family sent the text messages, and that Plaintiff should not have been charged or jailed.

71.    Van Dyke then called Defendant Bryant to the witness stand.

72.    Under oath, Defendant Bryant acknowledged that the text messages did not threaten anyone, did not name Mr. Howell, and did not meet the statutory elements of harassment or stalking under Tennessee law.

73.    After Defendant Bryant's testimony, the court dismissed the stalking charge against Plaintiff.

74.    No criminal charges remain pending against Plaintiff.

## MUNICIPAL LIABILITY ALLEGATIONS

75.    Defendant City of Bolivar, through its Chief of Police Michael Jones, personally participated in the constitutional violations by visiting the District Attorney and insisting that arrest warrants be issued despite his knowledge that no probable cause existed for a criminal prosecution.

76.    The Chief of Police is the final policymaker for the City of Bolivar with respect to law enforcement activities conducted by the City of Bolivar Police Department.

## DAMAGES

77.    As a direct and proximate result of the Defendants' violations of his federally protected rights, Plaintiff has suffered:

a) Pain and suffering;

b) Physical and mental injuries;

c) Pecuniary damages;

d) Loss of enjoyment of life; and

e) Serious mental suffering and emotional distress.

78.    Based on the intentional and reckless misconduct, Plaintiff Mayfield requests an award of punitive damages against Defendants.

## COUNT 1 – WRONGFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT 42. U.S.C. § 1983

79.    Plaintiff Adam Mayfield was unlawfully seized and arrested by Defendants without probable cause in violation of the Fourth Amendment to the United States Constitution.

80.    At the time of the arrest, Defendants lacked any specific, articulable facts reasonably indicating that Plaintiff had committed harassment, stalking, or any other criminal offense under Tennessee law.

81.    The text messages forming the basis of the complaint did not contain nay threat, did not identify Mr. Howell, were not sent to Mr. Howell, did not cause fear, and did not satisfy any statutory element of harassment or stalking.

82.    No reasonable officer could have concluded that the messages constituted harassment or stalking, particularly where the alleged "victim" never received any communication, and where each message was sent to third parties.

83.    Defendants ignored exculpatory facts readily available, including the District Attorney's explicit statement that the matter was civil and not criminal.

84.    Defendants were fully aware that the alleged conduct failed to meet any statutory element of harassment or stalking yet pursued arrest regardless.

85.    Defendants threatened Plaintiff with the incarceration of his wife, child, mother, and elderly grandmother if he refused to confess, demonstrating coercive intent rather than good-faith investigation.

86. The Chief of Police, Defendant Jones, personally visited the District Attorney to insist upon warrants even after the District Attorney explicitly stated no crime had occurred.

87. Defendants' actions constituted an unreasonable seizure of Plaintiff's person under the Fourth Amendment.

88. No objectively reasonable officer could have believed probable cause existed for the arrest.

89. Plaintiff suffered loss of liberty, prolonged confinement, humiliation, reputational harm, emotional distress, and financial losses as a direct and proximate result of the wrongful arrest.

90. Defendants' actions were willful, malicious, intentional, and in deliberate disregard of Plaintiff's constitutional rights.

91. Plaintiff seeks all compensatory and punitive damages available under 42 U.S.C. § 1983, as well as costs and attorney's fees under 42 U.S.C. § 1988.

## COUNT 2 - MALICOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT 42. U.S.C. § 1983

92. Defendants caused criminal proceedings to be initiated and continued against Plaintiff without probable cause, in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure, as incorporated through the Fourteenth Amendment.

93. Defendants knowingly pursued criminal charges against Plaintiff despite having actual knowledge that: (1) the text messages did not satisfy any statutory element of harassment or stalking, (2) the alleged "victim" did not receive the messages,

and (3) the District Attorney had determined the matter to be civil and not criminal.

94. Defendants deliberately withheld exculpatory information and ignored evidence that disproved Plaintiff's involvement, including the mismatched Aeneas account, incorrect account number, and misspelled name of Plaintiff's mother.

95. Defendants pressured, coerced, and threatened Plaintiff and his family in order to extract a false confession, demonstrating that the prosecution was initiated for improper motives rather than pursuant to lawful authority.

96. The Chief of Police personally intervened with the District Attorney to insist warrants be issued even after the prosecutor advised that Plaintiff had committed no crime, thereby directly causing the initiation of criminal process.

97. The criminal proceeding was commenced without probable cause and continued through Plaintiff's arrest, booking, confinement, and judicial arraignment.

98. The prosecution of Plaintiff terminated in his favor on October 6, 2025, when the charge was dismissed after the District Attorney acknowledged: (1) no law had been violated, (2) no evidence connected Plaintiff to the text messages, and (3) no probable cause had existed to charge Plaintiff.

99. The Fourth Amendment prohibits the initiation and continuation of criminal charges in the absence of probable cause, and a completed prosecution that ends favorably for the accused gives rise to actionable malicious prosecution under federal law.

100. Defendants knew there was no probable cause to initiate charges, but proceeded anyway for retaliatory, punitive, and political purposes.

12

101.    Defendants' conduct was willful, malicious, knowing, and carried out in reckless disregard of Plaintiff's constitutional rights.

102.    As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, unlawful confinement, emotional distress, reputational injury, financial losses, and continuing stigma within the community.

103.    Plaintiff seeks compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all other relief to which he may be entitled.

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Adam Mayfield requests:

I.      Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II.     A jury be empaneled to try this case;

III.    That a Declaratory Judgment be entered;

IV.     That Plaintiff Mayfield be awarded nominal damages;

V.      That Plaintiff Mayfield be awarded compensatory damages in the amount of 2,000,000;

VI.     That Plaintiff Mayfield be awarded punitive damages against Defendants, Bryant, Burkeen, and Jones in an amount deemed appropriate by a jury;

VII.    That Plaintiff Mayfield be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII.   For pre- and post-judgment interest on all damages awarded;

13

IX.    For such other, further, and general relief as the Court deems just and

appropriate.


Respectfully submitted,

*/s/ Paul D Randolph*
Paul D Randolph #39667
BRAZIL CLARK, PLLC
760 E. Argyle Avenue
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
paul@brazilclark.com